UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| YADIRA PEREZ-RODRIGUEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 18-01334-JGD |
| ANDREW SAUL, Commissioner of | ) | |
| the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF DECISION AND ORDER
## ON CROSS-MOTIONS REGARDING DENIAL OF
## <u>SOCIAL SECURITY DISABILITY INSURANCE BENEFITS</u>

March 23, 2021

DEIN, U.S.M.J.

## I.   <u>INTRODUCTION</u>

Plaintiff Yadira Perez-Rodriquez ("Perez-Rodriguez") has brought this action pursuant to

section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), challenging the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying her claim for

Social Security Disability Insurance ("SSDI") benefits.  The matter is presently before the court

on the "Plaintiff's Motion to Vacate Commissioner's Decision and Request [for] Remand for

Further Proceedings" (Docket No. 42) by which Perez-Rodriguez is seeking an order vacating the

Commissioner's denial of her claim for benefits and remanding the matter to the Social Security

Administration ("SSA") for further administrative proceedings.  It is also before the court on the

defendant's "Motion for Order Affirming the Decision of the Commissioner" (Docket No. 45) by

which the Commissioner is seeking an order affirming his decision that Perez-Rodriguez was not

disabled during the time period relevant to her claim and is therefore not entitled to SSDI

benefits.  At issue is whether the Administrative Law Judge ("ALJ"), in reaching his conclusion

that Perez-Rodriguez was not disabled, erred by failing to consider whether the plaintiff's

fibromyalgia, either alone or combination with her other impairments, medically equaled one

of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Social Security

regulations.  Also in dispute is whether the ALJ committed error by assessing the plaintiff's

overall character and truthfulness in connection with his evaluation of her subjective claims of

pain and other symptoms, and by failing to properly weigh the opinions of various medical

sources regarding the nature and severity of Perez-Rodriguez's impairments.

As described below, this court finds that while substantial evidence supports the ALJ's

approach to evaluating the plaintiff's subjective complaints of symptoms, his failure to consider

whether her fibromyalgia equaled a listed impairment, or to properly weigh the opinions and

findings of the plaintiff's physiatrist and rheumatologist, warrants a remand to the

Commissioner.  Specifically, this court concludes that a remand is necessary for consideration of

the plaintiff's fibromyalgia, including an evaluation as to whether that impairment rendered

Perez- Rodriguez presumptively disabled at step three of the disability analysis, and an analysis

of the longitudinal impact of fibromyalgia on the plaintiff's residual functional capacity, as

detailed below in connection with this court's discussion regarding the opinions of Dr. Pares-

Iturrino and Dr. Rios Sola.  Accordingly, and for all the reasons that follow, the Commissioner's

motion to affirm is DENIED and the plaintiff's motion to vacate and remand is ALLOWED.  The

matter shall be remanded for further findings and/or proceedings consistent with this Decision.

## II. STATEMENT OF FACTS[1]

Perez-Rodriguez was born on August 7, 1970 and was 41 years old at the time she applied for SSDI.  (Tr. 703).  She finished high school and completed some college but did not obtain a college degree.  (Tr. 56, 1961).  At the time of her hearing before the ALJ, Perez-Rodriguez was living in Puerto Rico with her two school aged children.  (Tr. 54-56).  She is divorced and receives child support payments.  (Tr. 55-56).

During the period from 1993 to April 2008, Perez-Rodriguez worked as a temporary secretary, a receptionist, an administrative assistant and a document control clerk.  (Tr. 61-64, 721).  Although she stopped working in 2008 due to the alleged onset of her disability, she performed part-time secretarial work in 2011 and 2012 while trying to finish school to learn how to be an administrative assistant and office manager.  (Tr. 57; see also Tr. 712, 814).  Perez-Rodriguez claims she was unable to complete school or perform any work after 2012 due to pain, anxiety, depression and other symptoms she was experiencing as a result of her medical conditions.  (See Tr. 57, 65-69, 720).  The plaintiff contends that she became disabled from working due to severe depression with psychosis, anxiety, degenerative disc disease, bilateral carpal tunnel syndrome, neuropathy, chronic migraines, fibromyalgia, osteoarthritis, allergic conjunctivitis, tonsillitis, high cholesterol and myositis.[2]  (Tr. 65, 427, 720).

---

[1] References to pages in the transcript of the record proceedings (Docket No. 41-1) shall be cited as "Tr. ___."  The ALJ's Decision shall be cited as "Dec." and can be found beginning at Tr. 14.

[2] During the hearing before the ALJ, Perez-Rodriguez testified that breast cancer also prevented her from working.  (Tr. 65).  The ALJ found that Perez-Rodriguez's cancer was not a medically determinable impairment during the period relevant to her claim for SSDI because her cancer diagnosis occurred after the date when she was last insured by the program and "there is no reason to assume that the claimant's alleged symptoms . . . were the result of a developing cancer."  (Dec. 4; Tr. 17).  The plaintiff does not contest this finding so it is not necessary for the court to address it further.

[3]

**Procedural History**

Perez-Rodriguez filed an application for SSDI benefits on March 6, 2012, claiming that she became disabled and unable to work on December 31, 2008.[3]  (Dec. 1, Tr. 14; Tr. 426, 703). To qualify for SSDI benefits, an individual must become disabled during the period under which she is insured by the program.  See 20 C.F.R. § 404.131.  Because Perez-Rodriguez was last insured on September 30, 2015, she had to establish that she was disabled during the period from December 31, 2008 through September 30, 2015.  (Dec. Findings #1-2, Tr. 16; see also Tr. 709).

The plaintiff's application was denied initially on August 9, 2012, and upon reconsideration on April 18, 2013.  (Tr. 426, 445).  Subsequently, the plaintiff requested a hearing before an ALJ.  (Tr. 519-20).  The request was granted and the hearing was conducted by videoconference on June 3, 2016, with the ALJ appearing from Chicago, Illinois, and Perez-Rodriguez participating from San Juan, Puerto Rico.  (Tr.  48, 50-51).   A Spanish-English interpreter was present throughout the proceeding, and the plaintiff was represented by Irma Colon Miranda, a non-lawyer.  (See Tr. 51-52, 88).  Perez-Rodriguez testified during the hearing. (Tr. 54-76).  The ALJ also elicited testimony from a vocational expert ("VE"), who described the plaintiff's vocational background based on her past work experience and responded to hypothetical questions designed to determine whether jobs exist in the national and regional

---

[3] Although Perez-Rodriguez performed part-time secretarial work in 2011 and 2012, the Disability Determination Services ("DDS") determined that her earnings in every month except February 2012 were below the amount necessary to qualify as substantial gainful work activity.  With respect to February 2012, the DDS concluded that although the plaintiff "earned above the [substantial gainful activity] level for this month, this will be considered an unsuccessful [sic] work attemp."  (Tr. 716). Therefore, it determined that the alleged date of onset of her disability would be December 31, 2008. (Id.).

economies for an individual with the same age, educational background, work experience and residual functional capacity ("RFC") as the plaintiff.  (Tr. 77-85).

On August 3, 2016, the ALJ issued a decision denying the plaintiff's claim for benefits. (Tr. 8-29).   Perez-Rodriguez then filed a request for review of the ALJ's decision by the Social Security Appeals Council.  (Tr. 702).  On March 30, 2018, the Appeals Council denied the plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner for purposes of review.  (Tr. 1-5).  Accordingly, the plaintiff has exhausted all her administrative remedies and the case is ripe for judicial review pursuant to 42 U.S.C. § 405(g).

## The ALJ's Decision

A claimant is not entitled to SSDI benefits unless she is "disabled" within the meaning of the Social Security Act, which defines "disability" as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  In the instant case, the ALJ concluded that Perez-Rodriguez "was not under a disability, as defined in the Social Security Act, at any time from December 31, 2008, the alleged onset date, through September 30, 2015, the date last insured."  (Dec. Finding #11, Tr. 29 ).  It is undisputed that the ALJ, in reaching his decision that Perez-Rodriguez was not disabled, performed the five-step sequential evaluation required by 20 C.F.R. § 404.1520.  The procedure resulted in the following analysis, which is further detailed in the ALJ's "Findings of Fact and Conclusions of Law."  (See Dec. 3-16, Tr. 16-29).

[5]

The first inquiry in the five-step evaluation process is whether the claimant is "engaged in substantial gainful work activity[.]"  Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).  If so, the claimant is automatically considered not disabled and the application for benefits is denied.  See id.  In this case, the ALJ found that Perez-Rodriguez did not engage in such activity during the relevant time period.  (Dec. Finding #2, Tr. 16).  Therefore, he proceeded to the second step in the sequential analysis.

The second inquiry is whether the claimant has a "severe impairment," meaning an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]"  20 C.F.R. § 404.1520(c).  If not, the claimant is deemed not to be disabled and the application for benefits is denied.  See Seavey, 276 F.3d at 5.  Here, the ALJ determined that Perez-Rodriguez suffered from the following severe impairments during the period from December 31, 2008 through September 30, 2015: "degenerative lumbar and cervical disc disease (C5-C6, L4-L5); a left S1 nerve root radiculopathy; hx of allergic conjunctivitis; mild bilateral carpal tunnel syndrome; diffuse osteoarthritis/fibromyalgia; and major depressive disorder."  (Dec. Finding #3, Tr. 17).

The ALJ acknowledged the plaintiff's claim that her disabilities also included anxiety, chronic migraines and high cholesterol among other conditions, but he determined that they did not constitute severe impairments for purposes of her claim for benefits.  (See Dec. 4-5, Tr. 17-18).  The ALJ did find it appropriate to accommodate certain of the plaintiff's non-severe conditions in his ongoing analysis.  With respect to the plaintiff's migraines, the ALJ determined that they "were not found, definitely, at any time, to be caused by a neurological or cerebral abnormality" and were "only *the symptom* of her other impairments (e.g., it is not uncommon

[6]

for an individual with a history of severe allergies, severe depression or severe cervical disc disease to experience migraines)."  (Dec. 4, Tr. 17 (emphasis in original)).  Nevertheless, he agreed to "partly accommodate[ ]" them in his finding regarding Perez-Rodriguez's RFC.  (Dec. 4, Tr. 17).  Similarly, the ALJ considered evidence that Perez-Rodriguez was treated for acute bronchitis, acute tonsillitis and allergies both before and after the alleged disability onset date. (Dec. 4, Tr. 17).  While he found that these conditions "were never persistently severe" because they were treated and resolved well within a 12-month period of time, the ALJ stated that he would accommodate them in his finding of Perez-Rodriguez's RFC by limiting her exposure to environmental irritants such as dust, odors, fumes and gases.  (Dec. 4, Tr. 17).

Because the ALJ determined that Perez-Rodriguez suffered from impairments that were severe, he proceeded to step three of the regulatory analysis.  The third inquiry is whether the claimant has an impairment equivalent to a specific list of impairments contained in Appendix 1 of the Social Security regulations.  See Seavey, 276 F.3d at 5; 20 C.F.R. § 404.1520(d).  At this step, the ALJ concluded that the plaintiff's mental and physical impairments, either alone or in combination, did not meet or medically equal any of the listed impairments.  (Dec. Finding #4, Tr. 18).  The parties dispute whether this finding was supported by substantial evidence.

In connection with his finding at step three, the ALJ considered whether Perez-Rodriguez's lumbar and cervical disc abnormalities met or equaled Listing 1.04 relating to disorders of the spine, and whether her mild bilateral carpal tunnel syndrome met Listings 11.04B and 11.14 for peripheral neuropathies with "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station" despite treatment.  (Dec. 5, Tr. 18 (alteration in original)).  He

also considered whether the plaintiff's depression met or medically equaled Listing 12.04

pertaining to depressive, bipolar and related disorders.  (Dec. 5-6, Tr. 18-19).  However, the ALJ

did not explicitly reference Perez-Rodriguez's fibromyalgia or compare it to any of the listed

impairments.  (See Dec. 5-6, Tr. 18-19).  For the reasons detailed below, this court finds that his

failure to do so warrants a remand to the SSA for further consideration.

After finding that the plaintiff's impairments did not meet or medically equal any of the

listed impairments, the ALJ proceeded to step four in his analysis.  The fourth inquiry asks

whether "the applicant's 'residual functional capacity' is such that he or she can still perform

past relevant work[.]" Seavey, 276 F.3d at 5.  In order to answer this question, the ALJ must first

determine the claimant's RFC.  In the instant case, the ALJ assessed Perez-Rodriguez's RFC as

follows:

> After careful consideration of the entire record, the undersigned finds that,
> through the date last insured, the claimant had the residual functional capacity
> to lift, carry, push, pull up to 20 pounds occasionally and 10 pounds frequently;
> sit for a total of six hours a day; and stand and/or walk for a total of up to six
> hours a day.  She could never climb ladders, ropes, or scaffolds, but occasionally
> climb ramps and stairs. She could occasionally balance and stoop, but never
> crouch, kneel, or crawl.  She was able frequently to do handling and fingering
> with both upper extremities.  In a work setting, the claimant would have needed
> to avoid all exposure to wetness (including wet, slippery, uneven surfaces) and
> hazards (such as dangerous machinery and unprotected heights).  She would
> have needed to avoid concentrated exposure to noise.  She would have needed
> to avoid moderate exposure to fumes, odors, dusts, mites, gases, and poor
> ventilation.  She was not able to do fast pace production work.  She would have
> required an occupation with set routine and procedures, and few changes during
> the work day.  She would have required an occupation with only occasional
> coworker contact and supervision; and only superficial contact with the public,
> on routine matters.  She was able to understand, remember, and carry out only
> short, simple, routine instructions.  She was able, however, to sustain attention
> and concentration on such instructions for two-hour periods at a time, and for
> eight hours in the work day; and to use judgment in making work decisions
> related to such instructions.  She was able to maintain regular attendance; be
> punctual within customary tolerances; and perform activities within a schedule.

(Dec. Finding #5, Tr. 19-20).  Perez-Rodriguez argues that this finding was erroneous because the ALJ did not properly evaluate the limiting effects of her pain and other symptoms, and because the ALJ ignored key medical evidence, improperly discounted the opinions of the plaintiff's treating physicians and "cherry-picked" the record in order to undermine the assessments of various medical examiners.  As explained in detail below, this court finds that the ALJ properly evaluated the plaintiff's subjective complaints of pain and other symptoms, but erred in his handling of opinion evidence and medical findings related to Perez-Rodriguez's fibromyalgia.

In reaching his conclusion regarding Perez-Rodriguez's RFC, the ALJ followed established procedures.  Thus, the ALJ first considered the plaintiff's symptoms and the extent to which those symptoms were consistent with the objective medical evidence and other evidence of record.  (Dec. 7-8, Tr. 20-21).  Because he determined that Perez-Rodriguez's medically determinable impairments could reasonably be expected to cause the plaintiff's alleged symptoms, he evaluated whether the plaintiff's subjective statements about the intensity, persistence and limiting effects of her pain and other symptoms were supported by the record as a whole.[4]  (See Dec. 8-15, Tr. 21-28).  Accordingly, the ALJ considered the plaintiff's testimony at the hearing, the objective medical evidence, available opinion evidence and other

---

[4] Although the ALJ did not state explicitly that Perez-Rodriguez's medically determinable impairments could be expected to produce her subjective symptoms, that finding is implicit in the fact that he went on to evaluate the extent to which her symptoms limited her ability to work and in his conclusion that "the claimant's symptoms would have been reasonably expected, before the date last insured, to require her assignment to light unskilled work with reduced interpersonal and stress demands."  (See Dec. 8, Tr. 21).

evidence of record.  (See Dec. 7-15, Tr. 20-28).  The ALJ concluded that in this case, "the claimant's symptoms would have been reasonably expected, before the date last insured, to require her assignment to light unskilled work[5] with reduced interpersonal and stress demands. Because of her alleged migraines, it would have been prudent to minimize her exposure to wetness, hazards, and noise."  (Dec. 8, Tr. 21).  He further concluded that to the extent Perez-Rodriguez alleged "that she was unable, at all times after December 2008, to do any type of work on a sustained basis, . . . the evidence of record does not support her allegations."  (Dec. 8, Tr. 21).

After explaining the basis for his RFC determination, the ALJ determined that Perez-Rodriguez was unable to perform her past relevant work as an administrative clerk or secretary. (Dec. Finding #6, Tr. 28).  Consequently, he reached the fifth and final step in the sequential analysis.

The fifth inquiry is whether, given the claimant's "[RFC], education, work experience and age," the claimant is capable of performing other work.  See Seavey, 276 F.3d at 5; 20 C.F.R. § 404.1520(a)(4)(v).  If so, the claimant is not disabled.  20 C.F.R. § 404.1520(g).  At step five, the Commissioner has the burden "of coming forward with evidence of specific jobs in the national economy that the applicant can still perform."  Seavey, 276 F.3d at 5.  Here, the ALJ relied on

---

[5] 20 C.F.R. § 404.1567(b) defines "light work" as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

the VE's testimony to conclude that Perez-Rodriguez was capable of performing jobs that existed in significant numbers in the national economy and the Territory of Puerto Rico, including the jobs of laundry folder, mail clerk, and packager. (Dec. 15-16, Tr. 28-29). Therefore, the ALJ found that Perez-Rodriguez was not disabled under the Social Security Act at any time from December 31, 2008, her alleged onset date, through September 30, 2015, her date last insured.  (Dec. Finding #11, Tr. 29).

Additional factual details relevant to this court's analysis are described below where appropriate.

### III. ANALYSIS

#### A.  Standard of Review

In this action, Perez-Rodriguez is seeking judicial review of the Commissioner's "final decision" pursuant to the Social Security Act § 205(g), 42 U.S.C. § 405(g).  The Social Security Act provides in relevant part as follows:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action .... The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by *substantial evidence*, shall be conclusive ....

42 U.S.C. § 405(g) (emphasis added).  The Supreme Court has defined "[s]ubstantial evidence" to mean "'more than a mere scintilla.'  It means—and means only–'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Biestek v. Berryhill, 139 S. Ct. 1148, 1154, 203 L. Ed.2d 504 (2019) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S.

197, 229, 59 S. Ct. 206, 217, 83 L.Ed. 126 (1938)) (internal citations omitted); accord Purdy v.

Berryhill, 887 F.3d 7, 13 (1st Cir. 2018).

   As the First Circuit has explained:

   In reviewing the record for substantial evidence, we are to keep in mind that
   "issues of credibility and the drawing of permissible inference from evidentiary
   facts are the prime responsibility of the [Commissioner]." The [Commissioner]
   may (and, under his regulations, must) take medical evidence. But the resolution
   of conflicts in the evidence and the determination of the ultimate question of
   disability is for him, not for the doctors or for the courts. We must uphold the
   [Commissioner's] findings in this case if a reasonable mind, reviewing the record
   as a whole, could accept it as adequate to support his conclusion.

Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981)

(quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

Therefore, "the court's function is a narrow one limited to determining whether there is

substantial evidence to support the [Commissioner's] findings and whether the decision

conformed to statutory requirements." Geoffroy v. Sec'y of Health & Human Servs., 663 F.2d

315, 319 (1st Cir. 1981). The Commissioner's decision must be affirmed, "even if the record

arguably could justify a different conclusion, so long as it is supported by substantial

evidence." Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987).

   "Even in the presence of substantial evidence, however, the Court may review

conclusions of law, and invalidate findings of fact that are 'derived by ignoring evidence,

misapplying the law, or judging matters entrusted to experts.'" Musto v. Halter, 135 F. Supp. 2d

220, 225 (D. Mass. 2001) (quoting Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per

curiam)) (internal citations omitted). "Thus, if the ALJ made a legal or factual error, the court

may reverse or remand such decision to consider new, material evidence or to apply the correct

legal standard." Ross v. Astrue, No. 09-11392-DJC, 2011 WL 2110217, at *2 (D. Mass. May 26, 2011) (internal citation omitted).

**B.** **The ALJ's Failure to Evaluate Fibromyalgia at Step Three**

The plaintiff's first argument is that the Commissioner's decision must be vacated, and her claim remanded for further consideration, because the ALJ failed to consider, during his step three analysis, whether her fibromylagia "medically equaled any listing in appendix one of 20 C.F.R. § 404, subpart P, or whether Plaintiff's fibromyalgia medically equaled a listing in combination with at least one other medically determinable impairment." (Pl. Mem. (Docket No. 42) at 7). Although the ALJ found that Perez-Rodriguez's fibromyalgia was a severe impairment at step two, it is undisputed that he made no specific mention of fibromyalgia at step three and did not explicitly address whether it medically equaled a listed impairment. (See Dec. 4-5; Tr. 17-18). This court finds that his failure to do so warrants a remand to the Commissioner.

Social Security Ruling ("SSR") 12-2p provides guidance on how the SSA evaluates fibromyalgia in disability claims. SSR 12-2p, 2012 WL 3104869, at *1 (July 25, 2012). With respect to step three of the five-step analysis, the Ruling provides as follows:

> At step 3, we consider whether the person's impairment(s) meets or medically equals the criteria of any of the listings in the Listing of Impairments in appendix 1, subpart P of 20 CFR part 404 (appendix 1). [Fibromyalgia] cannot meet a listing in appendix 1 because [fibromyalgia] is not a listed impairment. At step 3, therefore, we determine whether [fibromyalgia] medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment.

Id. at *6. Thus, "[a]lthough fibromyalgia is not a listed impairment, at step three an ALJ must determine whether it medically equals a listing by itself or in combination with another

[13]

medically determinable impairment."  Cano v. Saul, No. 1:19-cv-11563-ADB, 2020 WL 1877876, at *12 (D. Mass. Apr. 15, 2020) (slip op.).  In this case, the ALJ specifically evaluated whether Perez-Rodriguez's lumbar and cervical disc abnormalities, carpal tunnel syndrome and depression met or medically equaled a listed impairment, but made no reference to her fibromyalgia.  (Dec. 5-6, Tr. 18-19).

The Commissioner argues that the ALJ's omission was not erroneous because "he did explicitly state that he considered all of her impairments."  (Def. Mem. (Docket No. 45) at 6).  However, the ALJ's actual language is far more ambiguous.  At step three, the ALJ specifically found that "[e]ven in combination the claimant's impairments did not meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 at any time before the [date last insured]."  (Dec. Finding #4, Tr. 18).  Because the ALJ made no mention of fibromyalgia in his step three analysis, it is not entirely clear that he did in fact consider it.

Even accepting the Commissioner's characterization of the ALJ's opinion, this court finds that the ALJ's analysis was insufficient.  The First Circuit has not yet weighed in on "the extent to which at step three the ALJ must discuss whether the claimant's severe conditions medically equaled a listing[.]"  Cano, 2020 WL 1877876, at *12 (quoting Arrington v. Colvin, 216 F. Supp. 3d 217, 233 (D. Mass. 2016) (internal punctuation omitted)), aff'd sub nom. Arrington v. Berryhill, No. 17-cv-01047, 2018 WL 818044 (1st Cir. Feb. 5, 2018).  "At a minimum, however, and–as required under SSR 12-2p–an ALJ must compare a claimant's fibromyalgia to a listing at step three."  Id.  The ALJ's failure to do so in this case constitutes "remandable error."  See id. at

*13 (quoting Lopez Davila v. Berryhill, No. 17-cv-12212, 2018 WL 6704772, at *16 (D. Mass. Nov. 6, 2018), and cases cited.

The defendant's remaining arguments do not alter this conclusion.  Specifically, the Commissioner contends that SSR 12-2p "directs an ALJ to Listing 14.09[,]" the listing for inflammatory arthritis, and the plaintiff failed to allege that she would have met or medically equaled this listing.  (Def. Mem. at 6).  He further contends that the record lacks the requisite medical findings to satisfy Listing 14.09.  (Id. at 6-7).  However, SSR 12-2p only references the listing for inflammatory arthritis as an "example" of a listing that may be used in evaluating a claimant's fibromyalgia at step three.  See SSR 12-2p, 2012 WL 3104869, at *6.  In the absence any discussion of fibromyalgia or an analysis as to whether the plaintiff's fibromyalgia, either alone or in combination with her other impairments, medically equaled any of the impairments listed in Appendix 1 of the Social Security regulations, this court cannot determine that the ALJ's step three analysis was supported by substantial evidence.  Therefore, a remand is necessary.

### C.   The ALJ's Evaluation of Perez-Rodriguez's Subjective Symptoms

Perez-Rodriguez's next challenge to the ALJ's decision concerns his evaluation of her subjective symptoms in connection with his determination, at step four, that the plaintiff had the RFC to carry out a limited range of unskilled light work.  The plaintiff argues that under SSR 16-3p, "[t]he focus of the evaluation should not be to determine whether a claimant is a truthful[ ] person.  Indeed, an individual's character should not be considered at all.  But that is precisely what the ALJ did in this case."  (Pl. Reply Mem. (Docket No. 48) at 3 (internal citation omitted)).  Therefore, she contends that a remand is required on this basis as well.  For the

reasons that follow, this court concludes that ALJ's handling of the evidence relating to Perez-Rodriguez's subjective complaints of pain and other symptoms was appropriate and supported by substantial evidence.

### SSR 16-3p

In 2016, the SSA rescinded SSR 96-7p, which had required the ALJ to assess the credibility of a claimant's statements regarding the intensity, persistence and limiting effects of his or her symptoms in determining disability claims, and replaced it with SSR 16-3p.  See SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017).  SSR 16-3p, like its predecessor, directs the ALJ to use "a two-step process for evaluating an individual's symptoms."  Id. at *3.  See also SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).  In contrast to SSR 96-7p, however, SSR 16-3p "instructs an ALJ not to evaluate a claimant's 'character or truthfulness' in evaluating the severity of the claimant's symptoms."  Coskery v. Berryhill, 892 F.3d 1, 6 (1st Cir. 2018) (quoting SSR 16-3p, 82 Fed. Reg. at 49467 (Oct. 25, 2017)).  Accordingly, under SSR 16-3p, the ALJ first must determine whether the claimant "has a medically determinable impairment (MDI) that could reasonably be expected to produce the individual's alleged symptoms[.]"  SSR 16-3p, 2017 WL 5180304, at *3.  If the ALJ concludes that the claimant's medically determinable impairment(s) could reasonably be expected to produce the alleged symptoms, the ALJ must go on to "evaluate the intensity and persistence of [the] individual's symptoms such as pain and determine the extent to which [the] individual's symptoms limit his or her ability to perform work-related activities[.]" Id. at *4.  SSR 16-3p clarifies that at this second step, the ALJ's "review of subjective assertions of the severity of symptoms is not an examination of a claimant's character, but rather, is an examination for the level of consistency between

[16]

subjective assertions and the balance of the record as a whole." Noerper v. Saul, 964 F.3d 738,

745 n.3 (8th Cir. 2020). Thus, as the First Circuit has described,

> under SSR 16-3p, which supersedes SSR 96-7p, an ALJ determining whether an
> applicant has the residual functional capacity that precludes a finding of
> disability must "evaluate the intensity and persistence of an individual's
> symptoms such as pain and determine the extent to which an individual's
> symptoms limit his or her ability to perform work related activities." [SSR 16-3p,
> 82 Fed. Reg.] at 49464. Moreover, SSR 16-3p provides that, in conducting that
> inquiry, the ALJ must "examine the entire case record, including the objective
> medical evidence; an individual's statements about the intensity, persistence,
> and limiting effects of symptoms; statements and other information provided by
> medical sources and other persons; and any other relevant evidence in the
> individual's case record." Id. *In addition, this new SSR expressly provides that
> the ALJ may not consider "an individual's character."* Id. at 49463.

Coskery, 892 F.3d at 4 (emphasis added). Therefore, under SSR 16-3p,

> [t]he focus of the evaluation of an individual's symptoms should not be to
> determine whether he or she is a truthful person. Rather, [the ALJ] will focus on
> whether the evidence establishes a medically determinable impairment that
> could reasonably be expected to produce the individual's symptoms and given
> the [ALJ's] evaluation of the individual's symptoms, whether the intensity and
> persistence of symptoms limit the individual's ability to perform work-related
> activities[.]

SSR-16-3p, 2017 WL 5180304, at *11.

### The ALJ's Analysis

The ALJ in the instant case followed the procedures set forth in SSR 16-3p. As described

above, the ALJ first determined that Perez-Rodriguez's medically determinable impairments

could reasonably be expected to produce her subjective symptoms. (See Dec. 7-8, Tr. 20-21).

He then proceeded to evaluate whether her statements as to the intensity, persistence and

limiting effects of her symptoms were supported by the record. (See Dec. 7-15, Tr. 20-28). In

carrying out that evaluation, the ALJ considered the available evidence. For instance, but

without limitation, the ALJ considered Perez-Rodriguez's testimony at the hearing, the objective

medical evidence, statements made by the plaintiff and available opinion evidence.  (See Dec. 7-15, Tr. 20-28).  He also considered information about the plaintiff's daily activities, family life and work activity during the relevant time period, as well as information about the nature, extent and side effects of her treatment.  (See Dec. 7-15, Tr. 20-28).  Accordingly, the ALJ properly relied on the record as a whole, as required by SSR 16-3p, in concluding that the plaintiff retained the capacity to perform a limited range of light unskilled work during the period from her alleged onset date through her date last insured, and that "the evidence of record does not support her allegations" "that she was unable, at all times after December 2008, to do any type of work on a sustained basis[.]"  (Dec. 8, Tr. 21).

### Plaintiff's Claims of Error

Nevertheless, Perez-Rodriguez argues that the ALJ ran afoul of SSR 16-3p by highlighting inconsistencies between her testimony and her prior complaints of pain and other symptoms. According to the plaintiff, "[a]lthough the ALJ explicitly avoided the use of the word 'credibility,' to reach [his] conclusion" that her symptoms were less severe than alleged, "he pointed to alleged inconsistencies between Plaintiff's testimony during the hearing and her prior complaints of pain and other symptoms within her medical record."  (Pl. Mem. at 7-8).  Thus, Perez-Rodriguez contends that the ALJ's focus on inconsistencies in her statements constituted error because it violated the Ruling's instruction not to assess "an individual's overall character or truthfulness[.]"  See SSR 16-3p, 2017 WL 5180304, at *11.

The fact that an ALJ highlights inconsistencies in a claimant's statements regarding her symptoms does not equate with an assessment of the individual's overall character or truthfulness.  As noted in SSR 16-3p, such inconsistencies "do[ ] not necessarily mean they are

[18]

inaccurate."  Id. at *9.  In fact, the Ruling explicitly contemplates that the record may contain statements, including statements by the claimant, that are inconsistent with the claimant's alleged subjective symptoms, and it directs the ALJ to consider such inconsistences in evaluating the extent to which the claimant's subjective symptoms affect his or her ability to work.  As SSR 16-3p reads in relevant part:

> If an individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record, we will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities .... In contrast, if an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work related activities ....

Id. at *8.  It further provides that

> [i]n determining whether an individual's symptoms will reduce his or her corresponding capacities to perform work-related activities[,] ... we will consider the consistency of the individual's own statements.  To do so, we will compare statements an individual makes in connection with the individual's claim for disability benefits with any existing statements the individual made under other circumstances.

Id.  The ALJ adhered to this guidance in assessing the plaintiff's RFC.  His decision on this matter was not in error.

Perez-Rodriguez next asserts that the ALJ violated SSR 16-3p by misinterpreting her response to a question he asked her during the hearing and relying on his own misunderstanding to conclude that she was not a truthful person.  (Pl. Mem. at 8; Pl. Reply Mem. at 4).  Specifically, during the hearing, the ALJ asked the plaintiff whether she had engaged in any work after December 31, 2008, the alleged date of onset of the plaintiff's disability.  (Tr. 57).  According to the ALJ, Perez-Rodriguez replied, "[e]ntiendo que si," meaning

[19]

"I understand that I did work[.]"  (Dec. 9, Tr. 22).  The ALJ then characterized this testimony as

an effort by the plaintiff "to imply that she had poor memory."  (Dec. 9, Tr. 22).   However, the

record indicates that his description of Perez-Rodriguez's reply to his question was incorrect,

and that she actually responded by saying, "I believe I did, I worked until 2012."  (Tr. 57).  The

plaintiff contends that the ALJ relied on his own mistranslation of her testimony to draw an

unreasonable inference about her memory, which he then used to determine that she was not

credible.  ( Pl. Reply Mem. at 4).   Again, this court finds that no error occurred.

The ALJ's discussion of this testimony in his written decision indicates that the plaintiff's

response to his question at the hearing had little if any impact on his determination that Perez-

Rodriguez's symptoms were not disabling during the relevant time period.  As the ALJ wrote in

his decision:

> Other evidence confirms the claimant's symptoms were not disabling at any time
> before the [date last insured].  At the hearing, when asked if she worked after
> the alleged onset date, the claimant tried to imply that she had poor memory –
> "Entiendo que si" ("I understand that I did work").  She suggested this work was
> insignificant, testifying that she worked only four hours per day – when, in fact,
> there is evidence she worked 40 hours per week.  As noted above, there is good
> reason to conclude that this work was not "substantial" – except for one month
> in 2012.  Still, in combination with the other evidence, this work activity suggests
> that she was able to do some type of work full-time.  Most importantly, she
> testified that she was "studying" then, though it is unusual for an allegedly
> disabled individual to seek vocational training or schooling.  This would explain
> why the claimant did not file for disability until March 2012, shortly after she left
> the job with Iris Miranda Rovira.  20 CFR 404.1529(c)(3)(i),(vii).

(Dec. 9, Tr. 22 (internal citation omitted)).  Thus, the ALJ was focused on evidence showing that

Perez-Rodriguez was able to work up to 40 hours a week, as well as attend school to obtain

more training, during the period when she claimed to be suffering from disabling symptoms.  In

fact, the ALJ went on to conclude that "since she was able to study and work" at a job requiring

[20]

her to answer the phone, greet clients, work on computers and sit or stand for periods of up to 30 minutes, "there was reason to think . . . that [she] was capable, in 2011 and 2012, of light *semiskilled* work with *frequent* social demands, notwithstanding her reports now of intense physical pain and severe emotional instability *at all times* since 2008." (Dec. 9, Tr. 22 (emphasis in original)). His misinterpretation of Perez-Rodriguez's hearing testimony appears to have had no impact on his reasoning. Nor does it undermine his conclusion that her activities during 2011 and 2012 were inconsistent with a claim of disabling symptoms.

The plaintiff's assertion that the ALJ's misinterpretation of her hearing testimony led him to assess her overall character and truthfulness, in violation of SSR 16-3p, is also belied by his finding regarding Perez-Rodriguez's RFC. Despite his determination that the plaintiff's work and educational pursuits provided "reason to think" that she had the capacity to carry out "semiskilled work with frequent social demands" in 2011 and 2012, the ALJ ultimately concluded that Perez-Rodriguez retained the capacity to perform only unskilled work with "only occasional coworker contact and supervision; and only superficial contact with the public, on routine matters." (Dec. Finding #5, Tr. 19-20). Moreover, while the ALJ explained that he was giving "great weight" to the assessments of state agency physicians who opined that the plaintiff was capable of performing "light" work during the relevant time period, he stated that he was going "further than them" by including additional postural limitations, as well as limitations relating to handling, fingering and the need for environmental restrictions. (See Dec. 14, Tr. 27). He also appears to have accounted for her alleged memory issues by limiting her to "an occupation with set routine and procedures, . . . few changes during the work day[,]" and "only short, simple, routine instructions." (Dec. Finding #5, Tr. 19-20). Accordingly, the

record indicates that the ALJ adopted the plaintiff's subjective complaints, at least to some extent, at step four of his analysis.[6]

Finally, Perez-Rodriguez argues that the ALJ rendered an improper finding regarding her character and truthfulness while evaluating records from two psychiatrists who expressed opinions as to when the plaintiff could return to work following her hospitalization for major depression at the end of February 2012.  (See Pl. Mem. at 8-9).  In connection with his description as to the weight he gave the psychiatrists' opinions, the ALJ wrote as follows:

> Though notable that the claimant needed to be hospitalized in the first place ... the claimant's GAF improved during the admission from 50 to 70.[7]  Because of the return of "mild" symptoms, it is hard to discern why the claimant chose to file for disability *the day after* the discharge [from the hospital].  The answer lies in the claimant's admission to [her psychiatrist,] Dr. Rodriguez[,] that she did not want to work.  Accordingly, while the undersigned gives great weight to the opinion, on March 5, 2012, of the doctor treating her in the hospital ("It is recommended that the patient does not return to work until after [3/9/12] which is when she is scheduled to be evaluate[d] by her psychiatrist"), the undersigned gives little weight to the unsupported opinion, on March 8, 2012,

_____

[6] In her reply to the Commissioner's motion to affirm, Perez-Rodriguez argues that the ALJ ignored or dismissed her chronic migraine symptoms in assessing her RFC.  (Pl. Reply at 4).  This argument is undermined by the ALJ's explicit decision to minimize the plaintiff's exposure to wetness, hazards and noise "[b]ecause of her alleged migraines[.]"  (Dec. 8, Tr. 21).

[7] The Global Assessment of Functioning ("GAF") scale "represents 'the clinician's judgment of the individual's overall level of functioning.'"  Karen S. v. Saul, No. 2:19-cv-00522-JHR, 2020 WL 6047693, at *5 n.4 (D. Me. Oct. 12, 2020) (slip op.) (quoting American Psychiatric Ass'n Diagnostic & Statistical Manual of Mental Disorders (4th ed. Text Revised 2000) ("DSM-IV-TR")).  Although the GAF scores are no longer used in the current version of the DSM, the Commissioner directed ALJs "to continue receiving and considering GAF scores as they would other opinion evidence but explained that the score must have supporting evidence to be given significant weight."  Santiago-Cruz v. Comm'r of Soc. Sec., No. 19-1239 (BJM), 2020 WL 7075509, at *7 (D.P.R. Dec. 3, 2020) (slip op.).  "A GAF score of 41-50 represents '[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).'"  Karen S., 2020 WL 6047693, at *5 n.4 (quoting DSM-IV-TR at 34).  "A GAF score of 61-70 reflects '[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.'"  Id. (quoting DSM-IV-TR at 34).

from Dr. Rodriguez, that the claimant was unable to work from February 23 to
April 24.  The undersigned gives little weight to Dr. Rodriguez's opinion, on May
8, 2012, that the claimant's period of temporary disability needed to be
extended to August 24, 2012.

(Dec. 11, Tr. 24 (emphasis and fourth alteration in original; internal citation omitted)).

According to Perez-Rodriguez, the ALJ's determination that she "chose to file for disability . . .

[because] she did not want to work" was an improper assessment of her overall character and

truthfulness, which violated SSR 16-3p.  (Pl. Reply at 4; see also Pl. Mem. at 8).

There is nothing improper about the ALJ's consideration of the plaintiff's comment to

her psychiatrist that she did not want to work, as such evidence may be viewed as being

inconsistent with her claim that the severity of her symptoms prevented her from working.  See

Arrington v. Berryhill, 2018 WL 818044, at *1 ("Drawing inferences from the record, resolving

conflicts, and assessing credibility were the ALJ's prerogatives.").  Nor is there anything

erroneous about the ALJ's effort to resolve inconsistent opinions from the plaintiff's physicians

about her ability to return to work.  See Arrington v. Colvin, 216 F. Supp. 3d at 240

("Inconsistencies between a treating physician's opinion and other evidence in the record are

for the ALJ to resolve." (quoting Lee v. Astrue, No. 10–10708–DJC, 2011 WL 2748463, at *11 (D.

Mass. July 14, 2011) (slip op.)).  While the ALJ might have chosen more dispassionate language,

this court does not read his discussion of the evidence as "a finding regarding [Perez-

Rodriguez's] 'overall character or truthfulness[ ]' in order to use that finding to assess the

strength of [Perez-Rodriguez's] evidence concerning [her] symptoms."  See Coskery, 892 F.3d at

7 (quoting SSR 16-3p, 2017 WL 5180304, at *11).  Rather, this court views the ALJ's references

to the plaintiff's statement to her psychiatrist, and her decision to file for SSDI even though the

evidence suggests she improved significantly during her hospitalization, to be part of his

[23]

obligation, as required under SSR 16-3p, to "examine the entire case record, including the objective medical evidence; . . . statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record" in assessing the intensity, persistence and limiting effects of the claimant's subjective symptoms.  See SSR 16-3p, 2017 WL 5180304, at *4 (internal punctuation omitted).

   D.  **Plaintiff's Challenge to the ALJ's Treatment of Opinion Evidence**

   Perez-Rodgriguez also argues that the ALJ's assessment of her RFC was erroneous because his handling of the available opinion evidence was not supported by substantial evidence.  In reaching his decision regarding the plaintiff's RFC, the ALJ reviewed the findings and opinions of various treating and consulting medical professionals.  (See Dec. 11-15, Tr. 24-28).  The ALJ explained that he was giving "great weight" to the opinions of state agency consultants who reviewed the records that were available at the time of the plaintiff's initial application for SSDI, and upon reconsideration, and concluded that Perez-Rodriguez had the RFC to perform a range of "light" work during the period from her alleged onset date through the date when she was last insured.  (Dec. 14, Tr. 27).  The ALJ also explained that he was going "further than" the state agency consultants by adding restrictions "with regard to most 'postural' areas (and to handling, fingering, and the need for environmental restrictions)," and "with regard to [Perez-Rodriguez's] ability to interact with others and to manage stress[.]" (Dec. 14, Tr. 27).  As described above, the ALJ concluded that Perez-Rodriguez retained the RFC to perform a limited range of unskilled light work that accommodated the additional restrictions.  (See Dec. Finding #5, Tr. 19-20).  The plaintiff challenges this finding on the grounds that the ALJ ignored relevant medical evidence, improperly weighed the opinions and

findings of her treating physicians, and "[c]herry-picked apparent inconsistencies of medical examiners' observations to determine that their assessments were somehow unsupported[.]" (See Pl. Mem. at 8-15; Pl. Reply Mem. at 2-3). For the reasons that follow, this court finds that while the ALJ's handling of the opinion evidence was otherwise appropriate, the ALJ erred by failing to properly weigh and consider the findings and opinions of medical providers who treated the plaintiff for fibromyalgia.

### Dr. Edelmiro Rodriguez

The plaintiff first takes issue with the ALJ's decision to assign "little weight" to the opinions of her psychiatrist, Dr. Edelmiro Rodriguez. (Pl. Mem. at 8-9). Dr. Rodriguez provided psychiatric care to the plaintiff following her discharge from First Panamerican Hospital where she had been hospitalized for depression from February 27, 2012 to March 5, 2012. (See Tr. 866-930, 1005, 1629-44). On March 8, 2012, Dr. Rodriguez opined that Perez-Rodriguez was unable to work during the period from February 23, 2012 through April 24, 2012, and on May 8, 2012, he opined that she would not be able to work until August 24, 2012 due to her mental impairments. (See Dec. 11, Tr. 24). Perez-Rodriguez argues that the ALJ's decision to assign little weight to Dr. Rodriguez's opinions was unreasonable because they were consistent with other evidence in the record. (See Pl. Mem. at 8-9). This court finds that the ALJ's decision on this matter was supported by substantial evidence.

In his written decision, the ALJ explained that he was giving "little weight" to Dr. Rodriguez's opinions because they were unsupported by the record. (Dec. 11, Tr. 24). Thus, the ALJ emphasized that at the time Perez-Rodriguez was released from the hospital on March 5, 2012, she was assessed as having a GAF score of 70, indicating "the return of 'mild'

symptoms[.]"  (Dec. 11, Tr. 24).  He also credited a hospital discharge note that was written by

Dr. Maria Martinez, the psychiatrist who treated the plaintiff during her hospitalization,

suggesting that Perez-Rodriguez could return to work after March 9, 2012.  (See Dec. 11, Tr. 24;

Tr. 866).  Moreover, the ALJ noted that at the time the plaintiff completed her SSDI application,

almost immediately after leaving the hospital, Perez-Rodriguez was observed "to be alert and

cooperative[.]"  (Dec. 12, Tr. 25; see also Tr. 703, 717).  The ALJ also found it significant that on

April 4, 2012, the plaintiff's physiatrist opined "that the claimant's 'mild' objective testing did

not explain such severe alleged symptoms (namely that the pains were worse even after

minimal exercise and housework)."  (Dec. 12, Tr. 25).  This evidence is adequate to support the

ALJ's assessment of Dr. Rodriguez's opinions.

     The ALJ further determined that to the extent Dr. Rodriguez relied on Perez-Rodriguez's

allegations in rendering his opinions about her ability to work, "this reliance was misguided,

since the claimant's allegations around this time were not supported, most of the time, by the

evidence." (Dec. 12, Tr. 25).  In support of this conclusion, the ALJ noted that in her March

2012 application for SSDI, Perez-Rodriguez indicated that she was taking 25 medications even

though "she was not taking 25 medications regularly."  (Dec. 12, Tr. 25; see also Tr. 722-23).  He

also found that "she claimed to have made changes in her work activity in December 2008" but

"admitted in the same filings that she was able to work in 2011 and 2012."  (Dec. 12, Tr. 25; see

also Tr. 720-21).  As described above, the ALJ concluded that the plaintiff's ability to study and

to work at a job that required her to answer calls, greet clients, operate computers and sit or

stand for 30 minutes at a time in 2011 and 2012 provided strong evidence that she was able to

carry out work-related activities and was not disabled during that time period.  (Dec. 9, Tr. 22).

[26]

Thus, this court finds that the ALJ's decision to afford "little weight" to Dr. Rodriguez's opinions was reasonable and based on substantial evidence.

The plaintiff's effort to argue otherwise is not persuasive.  In order to show that the ALJ was wrong not to credit Dr. Rodriguez, the plaintiff points to evidence that could be viewed as consistent with Dr. Rodriguez's opinions as to how long she had to remain out of work.  For example, Perez-Rodriguez points to Dr. Martinez's hospital discharge note, in which the psychiatrist wrote: "It is recommended that the patient does not return to work until after March 9, 2012 which is when she is scheduled to be evaluated by her psychiatrist [Dr. Rodriguez]."  (See Pl. Mem. at 9, Tr.  866).  According to the plaintiff, "this would suggest . . . that Dr. [Martinez] herself believed the primary therapist would be best positioned to determine when exactly [the plaintiff] would be able to return to work upon evaluation several days later."  (Pl. Mem. at 9 (internal citation omitted)).  In other words, the plaintiff contends that the ALJ was wrong to interpret Dr. Martinez's records as evidence that Perez-Rodriguez could return to work after March 9, 2012, and should have viewed them as evidence that Dr. Martinez was leaving the decision up to Dr. Rodriguez.

Perez-Rodriguez also points to a note dated April 4, 2012 from Dra. Rivera Vega, a treating physiatrist, to the plaintiff's primary care physician ("PCP"), in which Dra. Rivera Vega asked the PCP to "consider evaluation by rheumatology, neurology and continuation of psychiatry therapy in view that patient is not responding to current medications and physical therapy."  (Pl. Mem. at 9; see also Tr. 1442).  The plaintiff argues that this statement is "entirely consistent" with Dr. Rodriguez's opinions and with the plaintiff's filing for SSDI on March 6, 2012.  (Pl. Mem. at 9).

[27]

While the evidence cited by the plaintiff supports or may be interpreted to support Dr. Rodriguez's opinions, the plaintiff's argument ignores the contrary evidence and interpretations described by the ALJ in his written decision.  It also highlights the extent of the inconsistencies that exist in the record, as well as the conflicting inferences that may be drawn from the evidence.  "At this juncture, . . . the issue is not whether on appeal Plaintiff can articulate an interpretation of the evidence in her favor, but whether a reasonable factfinder could have weighed the evidence in the same way as the ALJ and whether substantial evidence supports that conclusion."  Velez v. Saul, No. 19-1717 (CVR), 2021 WL 168739, at *7 (D.P.R. Jan. 15, 2021).  "Where the facts permit diverse inferences, the Court will affirm the Commissioner even if the Court might have reached a different result, as long as that result is supported by substantial evidence."  Id.  In this case, the ALJ drew reasonable inferences from the evidence and came to a reasonable conclusion regarding the weight to give to Dr. Rodriguez's opinions.  Even if this court or another factfinder might have come to a different conclusion, there is substantial evidence in the record to support his decision on this matter.[8]

### Dr. Ericka Rivera Castro

Perez-Rodriguez's next challenge involves the manner in which the ALJ handled the opinion of Dr. Ericka Rivera Castro, a consulting psychiatrist.  Following an evaluation of the plaintiff on June 5, 2012, Dr. Rivera Castro diagnosed Perez-Rodriguez with "[Major] Depression

---

[8] Even if the ALJ had credited Dr. Rodriguez's opinion, that alone would not have been sufficient to establish that Perez-Rodriguez was disabled for purposes of her claim for benefits.  As described above, the Social Security Act defines "disability" as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  Dr. Rodriguez's opinion that Perez-Rodriguez was not able to work for approximately six months does not meet the durational requirements of the Act.

[28]

Recurrent severe with psychiatric features" and a GAF score of 55, indicating moderate

symptoms.  (Tr. 1471-73).  See also Robert v. Astrue, 688 F. Supp. 2d 29, 33 n.1 (D. Mass. 2010)

("A GAF score of 51-60 indicates moderate symptoms of impairment" (citing American

Psychiatric Ass'n Diagnostic & Statistical Manual of Mental Disorders (4th ed. Text Revised

2000)).  Dr. Rivera Castro opined that the plaintiff's "overall prognosis is guarded.

Improvement is not expected in next 12 months.  Prognosis for long term improvement (after

12 months) is guarded."  (Tr. 1474).  She recommended continued treatment consisting of

outpatient pharmacotherapy and psychotherapy.  (Id.).  The ALJ determined that Dr. Rivera

Castro's report

> was vague or internally inconsistent.  Notably, she wrote that the claimant's tone
> of voice was low, and the claimant was severely depressed, yet the claimant was
> alert and logical, making good eye contact.  She wrote that the claimant kept
> attention "all the time," yet the claimant was able to do no serial 7s.  Finally,
> despite assigning only a "moderate" GAF score (55), Dr. Rivera [Castro]
> suggested that the claimant was utterly clueless, as she did not appear to
> "understand[ ] the situation and response."

(Dec. 12, Tr. 25 (second alteration in original)).  Accordingly, the ALJ gave little weight to Dr.

Rivera Castro's opinions.

The plaintiff takes issue with the ALJ's suggestion "that distinct domains of a psychiatric

patient's mental state and outward impressions of appearance and affect are one and the

same."  (Pl. Mem. at 10).  Thus, she contends that it was error for the ALJ to find Dr. Rivera

Castro's report inconsistent.  However, the plaintiff has cited no authority supporting her

argument that the ALJ's comparisons were improper from a psychiatric standpoint.  Nor has she

pointed to anything that would preclude the ALJ from evaluating a psychiatrist's report in this

manner when considering how a claimant's psychological symptoms would impact her ability to

[29]

carry out work-related activities.  The report itself lumps categories describing the plaintiff's mental state together with categories describing such subjects as appearance and behavior under a single topic.  (See, e.g., Tr. 1472 (assessing "Mental Status" based on appearance, behavior, speech and language, thought process, thought content, perception, affect and mood, and orientation)).  Therefore, this court concludes that the ALJ's evaluation of Dr. Rivera Castro's report was appropriate, and his decision to give little weight to her opinion is entitled to deference.

### Dr. Benigno Lopez Lopez

After discussing Dr. Rivera Castro's report, the ALJ considered the opinion of Dr. Benigno Lopez Lopez, an orthopedic surgeon who examined the plaintiff on August 1, 2012 to evaluate her complaints of pain in her neck, lower back, arms and hands, as well as numbness in her left leg, and numbness and cramps in her right hand.  (Dec. 12-13, Tr. 25-26; see also Tr. 1506-08). Following his orthopedic examination, Dr. Lopez Lopez diagnosed the plaintiff with chronic lumbar muscle spasm, chronic cervical muscle spasm, depression and fibromyalgia.  (Tr. 1508). His prognosis for her was "guarded," and he opined that she "has a relevant, psychosomatic disorder.  Her complaints have not improved, so she is unable to return to gainful employment." (Tr. 1508).  The ALJ gave "no weight" to Dr. Lopez Lopez's opinion because he determined that "the doctor's findings were internally inconsistent." (Dec. 12-13, Tr. 25-26). Additionally, the ALJ found that Dr. Lopez Lopez "lacked the longitudinal basis and the specialized medical knowledge" to conclude that the plaintiff could not return to work.  (Dec. 13, Tr. 26).  The plaintiff challenges the ALJ's findings of inconsistencies as unreasonable.  (Pl.

Mem. at 10).  However, this court concludes that his decision on these matters must be upheld

on appeal.

The ALJ's determination that Dr. Lopez Lopez's findings were internally inconsistent is

well supported by the evidence.  As the ALJ wrote in his decision, Dr. Lopez Lopez found a

diminished range of motion in the plaintiff's lumbar and cervical spine, but full mobility in

Perez-Rodriguez's ankles, wrists, thumbs, forearms, knees, hips and shoulders.  (Dec. 12, Tr. 25;

Tr. 1507-08, 1516-17).  Dr. Lopez Lopez also found the plaintiff's strength in both hands to be

greatly diminished (3/5), but reported no deficits in her hand functions, including in her ability

to grip, grasp, pinch, finger tap, button her shirt, pick up a coin and write.  (Dec. 12, Tr. 25; Tr.

1515).  He reported that Perez-Rodriguez had normal leg strength, a normal gait, and that her

appearance was "good."  (Tr. 1506, 1508, 1514; see also Dec. 13; Tr. 26).  These findings

undermine his opinion that she was unable to return to work.

The ALJ's finding that Dr. Lopez Lopez lacked a basis for rendering an opinion of

disability based on a "psychosomatic disorder" is also supported by substantial evidence in the

record.  (See Dec. 13, Tr. 26).  As the ALJ noted, Dr. Lopez Lopez met with the plaintiff on only

one occasion so he had no opportunity to view the plaintiff over time.  (Dec. 13, Tr. 26).

Additionally, as an orthopedic surgeon, Dr. Lopez Lopez would have had no basis to opine on

Perez-Rodriguez's mental impairments or their impact on her ability to work.  Therefore, the

ALJ had good reasons for rejecting his opinion.

### Dr. Nannette Pares-Iturrino

The ALJ's approach to the opinion of Dr. Nannette Pares-Iturrino supports a different

conclusion.  The record shows that Perez-Rodriguez visited Dr. Pares-Iturrino, a physiatrist, on

multiple occasions in 2014, around the same time as the plaintiff was diagnosed with

fibromyalgia by her rheumatologist.[9]  (See Tr. 1873-78, 1893-98, 1902, 1924-26).  During her

appointments, the plaintiff complained of constant, dull pain in her back and neck area, which

increased with prolonged sitting, dressing, driving and standing.  (Tr. 1897-98, 1925).  Dr. Pares-

Iturrino reported that Perez-Rodriguez was suffering from "uncontrolled" fibromyalgia, for

which the plaintiff was prescribed Lyrica and physical therapy.  (See Tr. 1889, 1896, 1898, 1900,

1902).  Additionally, on December 9, 2014, Dr. Pares-Iturrino completed a form in which she

certified that Perez-Rodriguez was disabled and therefore eligible for an identification card for

people with disabilities from the Puerto Rico Department of Health.  (Tr. 1873-74).  On the

form, Dr. Pares-Iturrino identified the plaintiff's condition as fibromyalgia and chronic

migraines, and described her disabling impairments as generalized myalgias and fatigue[10] that

increased with "prolonged sitting/standing[.]"  (Tr. 1873-74, 1891).

The ALJ considered Dr. Pares-Iturrino's records and decided to give "no weight" to her

opinion that Perez-Rodriguez was disabled in December 2014.  (See Dec. 14, Tr. 27).  In support

of this finding, the ALJ rejected the plaintiff's reports to her physiatrist that she was not able to

tolerate past efforts at physical therapy and that Lyrica brought only mild improvement in her

pain.  (See Dec. 14, Tr. 27; see also Tr. 1898, 1902).  The ALJ noted that several months earlier,

in August 2014, the plaintiff had responded well to occupational therapy, reporting "almost no

pain" on August 28, 2014.  (Dec. 14, Tr. 27).  He also found it significant that "she was noted to

---

[9] Dr. Pares-Iturrino sometimes identifies herself in her records as "Dr. Nannette Pares Frumina."  (See, e.g., Tr. 1873-74).

[10] "[M]yalgia refers to pain in the muscles."  Johnson v. Astrue, 597 F.3d 409, 411 n.2 (1st Cir. 2009) (citing Dorland's Illustrated Medical Dictionary, at 149, 1205 (30th ed. 2003)).

have 5/5 strength in the end of September 2014" after starting on the Lyrica.  (Dec. 14, Tr. 27).

The ALJ acknowledged that Perez-Rodriguez's strength declined in October 2014, but noted

that it improved again on December 9, 2014, when Dr. Pares-Iturrino found her to have 5/5

strength.  (Dec. 14, Tr. 27; see also Tr. 1893).  The ALJ then went on to state as follows:

> [g]iven these objective fluctuations; the claimant's inconsistent reports
> concerning the effects of the treatment provided her; the possibility that she did
> not see any medical provider between January 15, 2015, and April 7, 2015;[11] the
> fact that there was another gap in treatment between April 13, 2015 and July 21,
> 2015 (when she reported generalized pain and migraines, but she was *out of her
> medications, including Lyrica*); the lack of evidence of multiple visits to an ER ...
> the suggestions in her testimony that she was more active in 2015 than she has
> alleged; and the fact that she was driving in May 2016, the undersigned must
> give no weight to a physiatrist's belief that the claimant was incapacitated in
> December 2014.  Alternatively, the undersigned emphasizes that this opinion
> was provided only so that the claimant was eligible for an identification card.
> Moreover, the physiatrist's belief that the claimant's "myalgias and fatigue"
> intensified with "prolonged sitting/standing" was vague.  The opinion was
> contrary, finally, to the finding, that day, of good muscle strength.

(Dec. 14, Tr. 27 (emphasis in original; internal citations omitted)).

Although the issue a close one, this court concludes that the ALJ's decision to reject Dr.

Pares-Iturrino's opinion lacked substantial evidence.  As an initial matter, the ALJ's reliance on

"objective fluctuations" in the medical reports does not support a conclusion that the plaintiff

was not disabled.  The SSA specifically recognizes that "the symptoms of [fibromyalgia] can wax

and wane so that a person may have 'bad days and good days.'"  SSR 12-2p, 2012 WL 3104869,

---

[11] The ALJ noted that there were some undated notes from Perez-Rodriguez's primary care doctor,
which may have reflected appointments between January 15, 2015 and April 7, 2015.  (Dec. 14, Tr. 27
n.7).  He further stated that those notes indicated nothing objectively wrong with the plaintiff, other
than "two notations of tenderness and/or limitation in her lower back."  (Id.).

at *6.  Consequently, the agency requires the ALJ to "consider a longitudinal record whenever possible" in order to assess the impact of fibromyalgia on the claimant's RFC.  Id.

It does not appear from his written decision that the ALJ fulfilled his obligation to assess the plaintiff's fibromyalgia over time in this case.  The record shows that beginning in August 2014, Perez-Rodriguez sought treatment from Dr. Grissel Rios Sola, a rheumatologist at the University of Puerto Rico's School of Medicine ("UPRSM") clinic, for longstanding complaints of polyarthralgias[12] and myalgias.  (Tr. 1698-1702).  During the initial examination, Dr. Rios Sola found a photosensitive rash on Perez-Rodriguez's face, upper neck and upper back, positive Phalen's and Tinel's tests consistent with carpal tunnel syndrome, early Heberden's nodes on her fingers, 18 out of 18 total tender points and painful, swollen joints.  (Tr. 1700-01).  Dr. Rios Sola diagnosed the plaintiff with fibromyalgia and early osteoarthritis on her hands, knees and shoulders, and Perez-Rodriguez continued to seek treatment at the UPRSM clinic throughout the remainder of 2014.  (Tr. 1703-16).  During those visits, the plaintiff continued to complain of persistent pain and to present with 16 out of 18 total tender points.  (See Tr. 1703-16).  This evidence is not only consistent with the diagnosis of fibromyalgia, but also may reasonably be viewed as providing support for Dr. Pares-Iturrino's opinion that the plaintiff was disabled in 2014.  See Johnson v. Astrue, 597 F.3d 409, 410, 412 (1st Cir. 2009) (per curiam) (noting that the diagnostic criteria for fibromyalgia includes "point tenderness in at least 11 of 18 specified sites[,]" and explaining that treating physicians must rely on patients' subjective complaints in fibromyalgia cases because trigger points are the only objective signs of the condition).

---

[12] "Arthralgia refers to pain in the joints[.]"  Johnson, 597 F.3d at 411 n.2 (citing Dorland's Illustrated Medical Dictionary, at 149, 1205).

However, the ALJ did not discuss this evidence in his written decision. Nor did he specifically discuss the impact of fibromyalgia on the plaintiff's RFC despite evidence that Perez-Rodriguez continued to complain of persistent pain from her fibromyalgia, for which she sought treatment from doctors at the UPRSM clinic on several occasions through October 2015. (See Tr. 1960-68).

Additional evidence also calls into question the ALJ's decision to reject Dr. Pares-Iturrino's opinion that Perez-Rodriguez was suffering from a disability in late 2014. For example, the record shows that on January 15, 2015, Dr. Pares-Iturrino prescribed a new round of physical therapy for the plaintiff two times a week. (Tr. 1889). While there do not appear to be any records reflecting the physical therapy appointments, this evidence raises some doubt about the ALJ's emphasis on the gaps in the plaintiff's treatment because it suggests that Perez-Rodriguez may have in fact obtained treatment for pain resulting from her fibromyalgia between January 15, 2015 and April 7, 2015.

The ALJ's heavy reliance on the opinions of the state agency medical consultants that the plaintiff could perform a range of light work also fails to account for the plaintiff's fibromyalgia. Each of those consultants completed his or her RFC assessment prior to 2014. (See Tr. 438-42, 462-66). Consequently, none of the consultants had an opportunity to review the records regarding the plaintiff's 2014 fibromyalgia diagnosis, the reports of her symptoms stemming from the exacerbation of her condition, or Dr. Pares-Iturrino's assessment that the symptoms of fibromyalgia rendered the plaintiff disabled as of December 2014. On remand, the ALJ should evaluate the longitudinal record regarding the plaintiff's fibromyalgia and

[35]

engage in further proceedings and/or make additional findings to assess the overall impact of

fibromyalgia on the plaintiff's RFC.[13]

### Dr. Griselle Rios Sola

The plaintiff's final challenge to the ALJ's decision concerns the records from her

rheumatologist, Dr. Griselle Rios Sola, regarding her treatment for fibromyalgia.   She argues

that the Commissioner's decision to deny her claim for benefits was improper because the ALJ

failed to specify what weight or consideration he gave to Dr. Rios Sola's findings, and because

"the ALJ's step 4 analysis never once appeared to consider the effects of Plaintiff's fibromyalgia

and its associated exertional and nonexertional physical and mental limitations."  (Pl. Mem. at

12, 14).  For the reasons described above, this court agrees that on remand, the ALJ should

address the longitudinal effects of the plaintiff's fibromyalgia on her RFC.  This court also agrees

that the ALJ should have discussed Dr. Rios Sola's findings relating to the effects of the

plaintiff's fibromyalgia, and that his failure to do so constituted error.

In determining whether a claimant is disabled, the SSA "will always consider the medical

opinions in [the claimant's] case records together with the rest of the relevant evidence."  20

C.F.R. § 404.1527(b).[14]  Pursuant to the so-called "treating physician" or "treating source" rule

applicable to this decision, the Commissioner "will always give good reasons . . . for the weight"

---

[13] Nothing herein should be viewed as a suggestion as to what weight the ALJ should give to Dr. Pares-Iturrino's opinion upon remand or what the ALJ's final conclusion should be regarding the impact of fibromyalgia on Perez-Rodriguez's RFC.  As described above, those are matters that must be left to the ALJ, and his findings on those issues will be upheld as long as they are supported by substantial evidence.

[14] 20 C.F.R. § 404.1527 applies to the evaluation of opinion evidence for claims filed before March 27, 2017.  Because Perez-Rodriguez filed her claim for SSDI in March 2012, 20 C.F.R. § 404.1527 is applicable to this case.

given to a "treating source's medical opinion."  20 C.F.R. § 404.1527(c)(2).  "Medical opinions"

are defined as "statements from acceptable medical sources that reflect judgments about the

nature and severity of [a claimant's] impairment(s), including [his or her] symptoms, diagnosis

and prognosis, what [he or she] can still do despite impairment(s), and [his or her] physical or

mental restrictions." 20 C.F.R. § 404.1527(a)(1).

The Commissioner argues that the ALJ was not required to state what weight or

consideration he gave to Dr. Rios Sola's findings because she made no statements about the

plaintiff's physical or mental abilities and rendered no opinion or assessment of the plaintiff's

RFC.  (Def. Mem. at 10-11).  However, Dr. Rios Sola and her colleagues at the UPRSM clinic did

make findings and draw conclusions regarding the nature and severity of the plaintiff's

impairment, such as the nature and intensity of her pain, her presentation of tender points, an

appropriate treatment plan, and changes in treatment.  (See Tr. 1708-16, 1960-68).   Dr. Rios

Sola's reports regarding the extent of Perez-Rodriguez's pain are especially significant under the

circumstances of this case in light of the fact that "[t]he primary symptom of fibromyalgia . . . is

chronic widespread pain[.]"  Johnson, 597 F.3d at 414.  Therefore, the ALJ should have

discussed how he considered these records in reaching his conclusion as to the plaintiff's RFC,

and he should address this issue on remand.[15]

## IV. CONCLUSION

For all the reasons detailed herein, the defendant's "Motion for Order Affirming the

Decision of the Commissioner" (Docket No. 45) is DENIED and the "Plaintiff's Motion to Vacate

---

[15] Given the ALJ's omissions with respect to the plaintiff's fibromyalgia, this court cannot conclude, as the Commissioner argues, that "Plaintiff cannot, and does not present evidence that she could not perform the exertional demands of a limited range of simple, light work[.]"  (Def. Mem. at 11).

Commissioner's Decision and Request [for] Remand for Further Proceedings" (Docket No. 42) is

ALLOWED.  The matter is remanded to the Commissioner for further proceedings consistent

with this Decision.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge